In re the MARRIAGE OF Mary Diane
MILLER and Dwight Fredrick
Miller

Upon the Petition of Mary Diane Miller,
Petitioner–Appellee/Cross Appellant,

And Concerning Dwight Fredrick Miller,
Respondent–Appellant/Cross
Appellee.

No. 95–428.

Court of Appeals of Iowa.

May 31, 1996.

Douglas L. Tindal of Shearer & Tindal, Washington, for appellant.

J. Terrence Denefe of Kiple, Kiple, Denefe, Beaver & Gardner, Ottumwa, for appellee.

Heard by SACKETT, P.J., and CADY and STREIT, JJ.

CADY, Judge.

Dwight Miller appeals and Mary Miller cross-appeals various provisions of a district court's dissolution decree. We affirm the decree as modified.

Dwight and Mary Miller married in August 1986 and dissolved their marriage in March 1995. Dwight entered the marriage with approximately $321,594 in farm assets and savings. Mary brought approximately $3817 into the marriage. Dwight worked throughout the marriage as a farmer, earning approximately $15,000 per year in wages. Mary worked at the Washington Medical Clinic earning approximately $20,000 in wages. They have no children.

The family farm organization was incorporated approximately one year into the marriage under the name Dwight and Mary Miller Farms, Inc., with both Mary and Dwight serving on the board of directors and as officers. The corporation provided health insurance, food, utilities, and other necessities for the couple. Dwight was the sole shareholder of the corporation. The corporation obtained three farms during the course of the marriage, and was very prosperous. Mary attended meetings, took minutes, and helped with the corporation records.

At the dissolution proceeding, Mary testified, in addition to her work at the clinic, she helped Dwight with the farming operations. She also described the household chores she did throughout the marriage, including laundry, cooking, cleaning, yard work, and maintaining the swimming pool. Mary admitted, however, she kept no records of the amount of time she spent working on the farm or doing household chores. Dwight's mother and father testified Mary did some work on the farm. Mary presented evidence from an independent real estate appraiser, who concluded the fair market value of the three farms was $446,000.

Dwight testified Mary rarely helped on the farm or performed household chores. He claimed her contributions added nothing to his farm organization, as evidenced by the continuing success and growth of the corporation after the couple's separation. He also claimed many of the assets of the farm corporation were gifts from his family and, therefore, should be excluded from the property distribution.

The district court issued a decree praising both Mary and Dwight for their frugal, hard-working life-styles which contributed to their financial security. It further found Mary contributed significantly to the farm corporation, and included the value of the corporation among the marital assets to be divided. The district court found the total marital assets were valued at $1,215,793. The decree awarded Dwight a credit for the $317,777 [1] for his premarital assets and seventy-

---

1. The district court offset Mary's premarital assets ($3177) from Dwight's premarital assets

($321,594) to come to its $317,777 credit.

five percent of the remaining marital assets. The decree awarded Mary twenty-five percent of the marital assets, or $224,504, and ordered Dwight to pay $7500 for her attorney fees.

Dwight appeals contending gifts made to him by his family members should have been excluded from the property distribution. He also argues certain depreciable items were counted twice, which over-inflated the total value of the farm assets. He further claims the district court improperly found Mary had significantly contributed to the farm corporation and its assets should have been excluded. Finally, Dwight contests the award of attorney fees. Mary cross-appeals contending the district court erred in not providing an equal split of the marital assets and seeks appellate attorney fees.

## I. Standard of Review

 In this equity action, our review is de novo. Iowa R.App. P. 4. We have a duty to examine the entire record and adjudicate anew rights on the issues properly presented. *In re Marriage of Steenhoek*, 305 N.W.2d 448, 452 (Iowa 1981). We give weight to the fact findings of the trial court, especially when considering the credibility of witnesses, but are not bound by them. Iowa R.App. P. 14(f)(7).

## II. Property Distribution

 The partners to a marriage are entitled to a just and equitable share of the property accumulated through their joint efforts. *In re Marriage of Russell*, 473 N.W.2d 244, 246 (Iowa App.1991). Iowa courts do not require an equal division or percentage distribution. *Id.* The determining factor is what is fair and equitable in each circumstance. *Id.* The distribution of the property should be made in consideration of the criteria codified in Iowa Code section 598.21(1) (1993). *In re Marriage of Estlund*, 344 N.W.2d 276, 280 (Iowa App.1983).

## A. Gifts

 Dwight contends $582,328 of the marital assets came from livestock and uncompensated labor given to him by his family members. As such, he contends $582,328 should be taken out of the property distribution and given to him. We agree "property inherited by either party or gifts received by either party prior to or during the marriage ... is the property of that party and not subject to a property division ... except upon a finding that refusing to divide the property is inequitable." *In re Marriage of Mentel*, 359 N.W.2d 505, 506 (Iowa App. 1984). *See also*, Iowa Code § 598.21(2).

The livestock, crops, machinery, rent reduction, use of certain equipment, and wages "given" by Dwight's family members do not truly represent gifts, or gifts to him alone. No gift taxes were paid in any of the years in which the alleged gifts were made. Moreover, no true "intent of the gift donor" can be ascertained from the evidence presented. *See In re Marriage of Martens*, 406 N.W.2d 819, 822 (Iowa App.1987). If these items constituted "gifts," there is no evidence they were to be gifts solely to Dwight, and not given to both spouses or to the corporation. As such, we find no error in including the full value of the corporation among the marital assets.

## B. Depreciable Assets

 Dwight contends certain depreciable items contained in the valuation of the corporation assets were counted twice. The district court primarily used Mary's exhibit 76 to determine the value of the land, which incorporated the appraisal report and figures from a recent income statement. The exhibit had taken out the values of the land from the balance sheet, since its value was covered by the appraisal. However, certain depreciable farm buildings, also included in the appraisal were not taken out of the figures from the income statement.[2]

We find the district court improperly valued Dwight and Mary Miller Farms, Inc., as it included figures for depreciable buildings

---

2. The appraisal included values from several bins, sheds, wire cribs, and barns as farm buildings to determine the full value of the land. No other types of depreciable property, such as farm equipment were included in the appraisal of the land.

twice. The independent appraisal found the total improvement costs to the land from the buildings to be $40,397. We, therefore, reduce the value of Dwight and Mary Miller Farms, Inc. by this amount, and conclude the value of the corporation is $780,099.81.

■ We specifically reject Dwight's contention the corporation income sheets are not a proper document to determine the actual value of the corporation. The income sheets reflected an accurate view of the value of the various farm assets owned by the corporation. Moreover, no other independent evidence or appraisal was offered by Dwight to indicate a different value.[3]

### C. Significant Contributions

■ Dwight contends Mary's contributions to the farm corporation and housekeeping duties were minimal, and in light of her other income, she should only be entitled to a property distribution of approximately $59,000. Dwight argues Mary's percentage of the property should reflect the percentage of time she spent working on the farm or performing household tasks. We disagree.

■ Precise percentage divisions are disfavored because "[t]he question is always what is an equitable and just award in a given set of circumstances." *In re Marriage of Cooper*, 225 N.W.2d 915, 919 (Iowa 1975). Parties to a dissolution proceeding are entitled to a just and equitable share of the property accumulated through their joint efforts. *In re Marriage of Francis*, 442 N.W.2d 59, 62 (Iowa 1989).

Dwight contends Mary was not able to provide any detailed records of the days in which she worked on the farm or performed household duties. We reject the notion a spouse must provide detailed documentation

to support testimony concerning any household duties or other work. Moreover, we look to the contributions of each party to the marriage. Iowa Code § 598.21(1)(c). This is a broad concept which extends well beyond contributions to the accumulation of property, and does not lend itself to recordkeeping.

The evidence presented supports the district court's finding Mary significantly helped with the farm activities, with the corporation's accounting, and with other marital contributions, such as household services.[4] The corporate assets were acquired during the course of the marriage, through the joint efforts of both spouses. We give weight to the district court's finding Mary to be very credible concerning the work she performed on the farm. Iowa R.App. P. 14(7). She is entitled to a just and equitable share of all the marital assets.

■ We, however, disagree with the district court's distribution of assets. The total value of marital assets, in light of the new valuation of the corporation, is $1,175,396. The district court awarded Dwight credit of $317,777 for premarital assets, leaving $857,619 for distribution. Of that amount, twenty-five percent was awarded to Mary.

■ Although an equal division is not necessary, it should nevertheless be a general goal of trial courts to make the division of property approximately equal. *In re Marriage of Conley*, 284 N.W.2d 220, 223 (Iowa 1979). This was not done in this case. Dwight argues his considerable premarital assets and assistance from his family justifies a disparity in the division because these factors propelled the parties to the financial success they achieved.

3. Dwight offered a different exhibit prepared by himself to show the value of the corporation and various liabilities possessed by the corporation. We do not find this exhibit to be a true representation of the actual value of the corporation, in light of testimony from the independent appraiser and the corporation's tax preparer.

4. Mary testified she helped, on her days off and when she got home from work, with hog chores which included sorting the hogs for sale, helping with the farrowing hogs, processing the pigs after they were born, injecting medicine into sick

hogs, hauling water out to hogs in the field, and cleaning the barn area. She also testified she helped with the construction of a fence, baling hay, spraying for weeds, occasionally ran errands for the farm on her lunch hour, and helped with the bookkeeping. Mary discussed her involvement as a member of the board of directors of the corporation, which included her involvement in meetings and the taking of minutes. Dwight, his father, and his mother also testified Mary worked on the farm.

We recognize the nature and extent of Dwight's premarital assets, as well as the generous help from his family members, likely contributed to the rapid and significant accumulation of assets during the marriage. If Dwight and Mary would have started their marriage without Dwight's assets, and never received help from Dwight's family during the marriage, it is unlikely they would have accumulated over $850,000 in assets.

Property which a party brings into the marriage is a factor to consider in making an equitable division. Iowa Code § 598.21(1)(b). In some instances, this factor may justify a full credit, but does not require it. Antenuptial agreements are available to preserve premarital assets. *See* Iowa Code § 598.21(1)(*l*). A premarital asset is not otherwise set aside like gifted and inherited property. Instead, it is a factor to consider, together with all the other circumstances, in making an overall division. Its impact on the ultimate distribution will vary with the particular circumstance of each case. Furthermore, in considering accumulations to premarital assets, we do not limit our focus to the parties' direct contributions to the increase. Instead, we broadly consider the contributions of each party to the overall marriage, as well as all other factors. Iowa Code § 598.21(1). Financial matters make up but a portion of a marriage, and must not be emphasized over the other contributions made to a marriage in determining an equitable distribution.

Considering all the relevant factors, we modify the decree to award Mary property totalling $400,000, or approximately one-third of the total property of $1,175,396. The factors primarily responsible for our division include the $317,777 in assets brought into the marriage by Dwight, as well as the tax consequences he is expected to face in satisfying the property distribution. The property distribution made by the trial court will remain the same, except Mary's cash settlement shall be $243,751. Dwight shall be permitted to pay this in equal annual amounts over three years, without interest, beginning December 1, 1996.

### III. Attorney Fees

District courts have considerable discretion in awarding attorney fees. *In re Marriage of Giles*, 338 N.W.2d 544, 546 (Iowa App.1983). To overturn an award the complaining party must show that the trial court abused its discretion. *Id.* Awards of attorney fees must be for fair and reasonable amounts, *In re Marriage of Willcoxson*, 250 N.W.2d 425, 427 (Iowa 1977), and based on the parties' respective abilities to pay. *In re Marriage of Lattig*, 318 N.W.2d 811, 817 (Iowa App.1982). An award of attorney fees is not a matter of right, but rests within the court's discretion and the parties' financial positions. *In re Marriage of Kern*, 408 N.W.2d 387, 390 (Iowa App.1987). We are to consider the needs of the party making the request, the ability of the other party to pay, and whether the party making the request was obligated to defend the trial court's decision on appeal. *In re Marriage of Castle*, 312 N.W.2d 147, 150 (Iowa App.1981).

We find no error in the district court's order for Dwight to pay $7500 in attorney fees. His ownership of significant assets and income derived from his salary and stock ownership of the farm is greater than Mary's income. We also find Mary is entitled to appellate attorney fees in the amount of $1500.

**AFFIRMED AS MODIFIED.**

VOGEL, J., takes no part.