**IN THE COURT OF APPEALS OF IOWA**

No. 3-1221 / 13-0666
Filed March 12, 2014

**IN RE THE MARRIAGE OF JEFFREY C. DEAN
AND MELISSA A. DEAN**

**Upon the Petition of
JEFFREY C. DEAN,**
        Petitioner-Appellee/Cross-Appellant,

**vs.**

**MELISSA A. DEAN, n/k/a MELISSA A. CHAPMAN,**
        Respondent-Appellant/Cross-Appellee.
_____

        Appeal from the Iowa District Court for Pottawattamie County, Gregory W.

Steensland, Judge.


        Melissa Chapman appeals, and Jeffrey Dean cross-appeals, certain

economic provisions of the parties' dissolution decree.  **AFFIRMED AS**

**MODIFIED.**


        Ryann A. Glenn of Petersen Law, P.L.L.C., Council Bluffs, for appellant.

        Joseph J. Hrvol of Joseph Hrvol, P.C., Council Bluffs, for appellee.


        Heard by Potterfield, P.J., and Doyle and Bower, JJ.

**DOYLE, J.**

Melissa Chapman, f/k/a Melissa Dean, appeals and Jeffrey Dean cross-appeals certain economic provisions of the decree dissolving their marriage. Melissa asserts the district court erred in not awarding her a greater cash settlement because it failed to include certain premarital gifts and purchases in its calculation. Jeffrey asserts the court erred in failing to reduce its home equity computation by the value of Jeffrey's premarital-gifted land upon which the marital home was built and in awarding Melissa trial attorney fees. Upon our review, we affirm as modified.

### I. Scope and Standards of Review.

We review dissolution of marriage cases de novo. Iowa R. App. P. 6.907; *In re Marriage of McDermott*, 827 N.W.2d 671, 679 (Iowa 2013). We decide the issues raised anew, but we do so with the realization that the district court possessed the advantage of listening to and observing firsthand the parties and witnesses. *McDermott*, 827 N.W.2d at 679 ; *In re Marriage of Zabecki*, 389 N.W.2d 396, 398 (Iowa 1986). Consequently, we credit the factual findings of the district court, especially as to the demeanor and believability of witnesses, but are not bound by them. Iowa R. App. P. 6.904(3)(g); *In re Marriage of Fennelly*, 737 N.W.2d 97, 100 (Iowa 2007). Finally, we note that because we base our decision on the unique facts of each case, precedent is of little value. *In re Marriage of Brown*, 776 N.W.2d 644, 647 (Iowa 2009).

### II. Background Facts and Proceedings.

Jeffrey and Melissa married in December 2005. No children were born of this marriage. Both parties were employed throughout the marriage. Jeffrey has

a high school education and is approximately ten hours short of his degree; Melissa has a Bachelor of Science degree from Iowa State University. Jeffrey entered into the marriage with significant premarital assets, specifically, numerous acres of land in Iowa and Nebraska.

During the marriage, the parties lived in a new house built on land given to Jeffrey by his parents in approximately 1995. To fund the building of the new house, Jeffrey used sale proceeds from a house he had sold, along with other assets and a mortgage. The mortgage was taken out prior to the parties' marriage; however, Melissa contributed to paying the mortgage during the parties' marriage. Additionally, Melissa made several payments during the course of the marriage for real estate taxes. The basement of the house was unfinished at the time of the marriage, but it was finished by the parties during their marriage. During the marriage, the parties did not share a bank account.

The parties separated in January of 2012, and Jeffrey remained in the marital home. On January 26, 2012, Jeffrey filed a petition to dissolve the marriage. Melissa later purchased a home in Council Bluffs for $80,000, with $10,000 loaned to her from her mother and a mortgage of $70,000.

Trial on the matter was held in February 2013. Melissa testified that she owned a house that was encumbered by a mortgage prior to the parties' marriage. Melissa sold her house in September 2005, netting approximately $35,000, and she and her daughter, now an adult living elsewhere, began living with Jeffrey. Melissa also owned certificates of deposit and had a savings account prior to the marriage equaling approximately $10,000. Melissa testified these funds were all spent during the marriage to pay for joint marital expenses,

including furniture. Melissa testified that initially Jeffrey divided the household expenses equally between them; however, she later learned she was paying about ninety percent of the expenses. She further testified that she contributed to the finishing of the marital home's basement by providing funds and labor.

Jeffrey testified, and he generally denied Melissa's claims she contributed monetarily to ninety percent of the marital expenses, including the finishing of the basement. He testified that most of the property he owned was gifted to him by his parents many years before the marriage. He emphatically testified that Melissa did not contribute to the care or expenses related to these properties.

Following the trial, the district court entered its decree dissolving the parties' marriage. The court declined Melissa's request that Jeffrey's premarital assets be included in its distribution calculation, explaining:

> Jeffrey has accumulated a fair amount of assets and net worth in his life. Melissa wants 50% of that wealth. The problem with Melissa's position is that Jeff did not accumulate any of this wealth through his own efforts, but merely by birth. The assets he now has with the exception of the home . . . consists exclusively of property gifted to him by his parents and other family members. These all occurred prior to this marriage. Melissa claims that she contributed to these properties in some way, but there isn't even an iota of evidence to support that position. She is not entitled to any share of those gifts, and they shall all be set aside as the property of Jeffrey.

But for a few items, the court awarded all personal property in that party's possession to that party. The court agreed with Jeffrey's expert's valuation of the marital home and the 1.77 acres of the property of $190,000. The court concluded Melissa was entitled to one-half of the equity in the home and land, after deducting the balance of the mortgage and note encumbrances upon the property of $82,800. The court ordered Jeffrey to pay Melissa a lump sum

property settlement in the amount of $41,400. Additionally, the court ordered Jeffrey to pay court costs and Melissa's attorneys' fees not to exceed $10,000.

Melissa filed a motion pursuant to Iowa Rule of Civil Procedure 1.904(2), requesting the court to reconsider its ruling. The district court denied her motion in all relevant respects.

Melissa now appeals the amount of the distribution payment calculated by the district court, and Jeffrey cross-appeals the court's valuation of the marital house and its award of trial attorney fees. Melissa requests appellate attorney fees. We address their arguments in turn.

### III. Discussion.

"Iowa is an equitable distribution state." *McDermott*, 827 N.W.2d at 678. To that end, partners to a marriage are entitled to a just and equitable share of the property accumulated during the marriage through their joint efforts. *In re Marriage of Miller*, 552 N.W.2d 460, 463 (Iowa Ct. App. 1996). Iowa law does not require an equal division or percentage distribution, but rather merely requires us to determine what is fair and equitable under the circumstances. *In re Marriage of Russell*, 473 N.W.2d 244, 246 (Iowa Ct. App. 1991). In determining what division would be equitable, courts are guided by the criteria set forth in Iowa Code section 598.21(5) (2011). *In re Marriage of Goodwin*, 606 N.W.2d 315, 319 (Iowa 2000). We look to the economic provisions of the decree as a whole in assessing the equity of the property division. *In re Marriage of Dean*, 642 N.W.2d 321, 325 (Iowa Ct. App. 2002). Again, the district court is afforded wide latitude, and we will disturb the property distribution only when

there has been a failure to do equity. *In re Marriage of Schriner*, 695 N.W.2d 493, 496 (Iowa 2005).

### A. Classification of Assets.

"The district court's first task was to identify and value all the assets subject to division." *McDermott*, 827 N.W.2d at 678. In so doing, "the district court looks for all marital assets that exist at the time of the divorce." *Id.* However, gifted and inherited property is generally not subject to a property division "except upon a finding that refusal to divide the property is inequitable to the other party or to the children of the marriage." Iowa Code § 598.21(6).

### 1. Gifted Property.

In considering gifted property, we must first determine whether the gift was given to one party only or if the gift was made to both parties. *In re Marriage of Vrban*, 359 N.W.2d 420, 427 (Iowa 1984). In making a determination as to whether property has been gifted to one or both parties, we consider (1) the intent of the donor and (2) the circumstances surrounding the gift. *See McDermott*, 827 N.W.2d at 678-79.

Here, virtually all of the properties owned by Jeffrey were obtained long before the marriage, as evidenced by the deeds and the proposed antenuptial agreement. Additionally, his father testified as to his intent in gifting the majority of those properties to Jeffrey, including those properties Jeffrey stands to inherit later. Consequently, there can be no question those properties were gifts to him and him only.

Next, we determine whether awarding the inherited or gifted property to Jeffrey would be unjust.  *Id.* at 679.  In so determining, we consider the following factors:

> (1) contributions of the parties toward the property, its care, preservation or improvement;
> (2) the existence of any independent close relationship between the donor or testator and the spouse of the one to whom the property was given or devised;
> (3) separate contributions by the parties to their economic welfare to whatever extent those contributions preserve the property for either of them;
> (4) any special needs of either party;
> (5) any other matter, which would render it plainly unfair to a spouse or child to have the property set aside for the exclusive enjoyment of the donee or devisee.

*Id.* (citation and internal alterations).

The district found none of these factors applied.  Upon our de novo review, we must agree.  The properties gifted to Jeffrey by his family are plainly a part of his family's farm past and future, and the gifts were given to him long before Melissa was in the picture.  Consequently, we conclude the court acted equitably in setting aside to Jeffrey the gifted property..

### 2.  *Premarital Purchased Properties.*

Melissa next argues the court erred in determining all of the properties owned by Jeffrey were gifts to him.  We agree.  Jeffrey testified he, along with his brother and brother-in-law, purchased approximately 360 acres of land in Iowa from their bank.  That property was later transferred to Jeffrey and his brothers' farm LLC, of which they each own one-third.  Additionally, Melissa notes that the Nebraska property was purchased by Jeffrey and his father in 1991.  Jeffrey also owned an interest in an apartment complex limited partnership.  Because Jeffrey

purchased the properties, those properties cannot be gifts. Consequently, setting them aside as such was not equitable.

"Property may be 'marital' or 'premarital,' but it is all subject to division except for gifts and inherited property." *Fennelly*, 737 N.W.2d at 103. "Property brought into the marriage by a party is merely a factor to consider by the court, together with all other factors, in exercising its role as an architect of an equitable distribution of property at the end of the marriage." *Schriner*, 695 N.W.2d at 496. There is no requirement that a court automatically award premarital property to the party who owned the property prior to the marriage. *McDermott*, 827 N.W.2d at 678.

Here, although the district court acted inequitably by setting aside non-gifted property, we ultimately agree with the result—these premarital properties should not be included in the asset allocation for purposes of determining the proper equalization payment. The district court determined Melissa made no contributions to those properties during the marriage, and we agree. Under the facts of this case, it would be inequitable to include those properties, given the short duration of the marriage and Melissa's noninvolvement with those properties. We therefore agree with the court's result of not including Jeffrey's purchased property in the asset allocation.

**B. Valuation of Assets and Equalization Payment.**

**1. Marital Home Valuation.**

Jeffrey argues the court erred in including in its valuation of the home the value of the 1.77 acres upon which the land sits. However, we find the court properly valued the property, observing the wide latitude afforded the court.

Melissa's appraisal supports a higher valuation. We therefore find the court properly valued the property at $190,000.

### 2. Settlement Payment.

Although we agree with the district court's rulings excluding Jeffrey's properties (except for the marital home property) from the asset allocation, we find the district court's settlement payment amount was unjust to Melissa. While Melissa did not specifically contribute to Jeffrey's purchased and gifted properties, the evidence here shows Melissa contributed her proceeds from the sale of her house, along with the sale of her bank certificates of deposit and use of her savings account, to the marital expenses. Jeffrey downplayed all of her contributions, but he admitted she made mortgage payments as well as real-estate-tax payments during the marriage. The evidence also shows Melissa contributed to the finishing of the basement in the marital house. Looking at the property division as a whole, to award Melissa only half the equity in the home was unjust, given her contributions to the marriage. Because of her substantial contributions to the martial home and expenses, from which Jeffrey benefitted, we conclude she is entitled to seventy percent of the equity in the marital home.

Using the home's valuation of $190,000, less the balance of the encumbrances, the house has a net equity of $82,800. We conclude Melissa is entitled to seventy percent of that amount, equaling $57,960.

### C. Trial Attorney Fees.

Jeffrey argues the district court erroneously awarded Melissa trial attorney fees. An award of attorney fees is not a matter of right, but rather rests within the district court's discretion. *In re Marriage of Hocker*, 752 N.W.2d 447, 451 (Iowa

Ct. App. 2008). We review the district court's award of attorney fees for abuse of discretion. *In re Marriage of Sullins*, 715 N.W.2d 242, 255 (Iowa 2006). An award of attorney fees is based upon the respective abilities of the parties to pay the fees and whether the fees are fair and reasonable. *In re Marriage of Applegate*, 567 N.W.2d 671, 675 (Iowa Ct. App. 1997).

Here, the evidence shows Jeffrey's income capacity and asset valuation was substantially more than Melissa's actual income at the time of the trial. Due to their disparate earning capacities, we cannot say the district court abused its discretion in awarding $10,000 in trial attorney fees to Melissa. We therefore conclude the district court did not abuse its discretion when it awarded Melissa attorney fees.

### D. Appellate Attorney Fees.

Finally, Melissa requests an award of appellate attorney fees. Appellate attorney fees are not a matter of right. *Sullins*, 715 N.W.2d at 255. We consider the parties' needs, ability to pay, and the relative merits of the appeal. *Id.* Applying these factors to the circumstances in this case, we award Melissa $3500 in appellate attorney fees.

### IV. Conclusion.

In considering the property division as a whole, we find it was inequitable. We therefore affirm the district court's dissolution decree as modified, awarding to Melissa a total lump sum settlement payment of $57,960. We affirm in all other respects. We award Melissa $3500 in appellate attorney fees. Costs are assessed to Jeff.

**AFFIRMED AS MODIFIED.**