**IN THE COURT OF APPEALS OF IOWA**

No. 14-1698
Filed August 19, 2015

IN RE THE MARRIAGE OF KELLY KIRK RICHARDS
AND VALORIE JEAN RICHARDS

Upon the Petition of
**KELLY KIRK RICHARDS,**
        Petitioner-Appellant/Cross-Appellee,

And Concerning
**VALORIE JEAN RICHARDS,**
        Respondent-Appellee/Cross-Appellant.

_____

        Appeal from the Iowa District Court for Lee (North) County, Michael J.

Schilling, Judge.


        A husband appeals, and a wife cross-appeals, from spousal support and

property distribution provisions of a dissolution decree.  **AFFIRMED AS**

**MODIFIED ON APPEAL; AFFIRMED ON CROSS-APPEAL.**



        Jennifer E. Klever-Kirkman of Robberts, Kirkman & Engler, L.L.L.P.,

Burlington, for appellant.

        Frank J. Nidey of Nidey Erdahl Tindal & Fisher, P.L.C., Cedar Rapids, for

appellee.



        Considered by Danilson, C.J., and Vaitheswaran and Doyle, JJ.

**DOYLE, J.**

Kelly Richards appeals the spousal support provisions of the decree dissolving his marriage to Valorie Richards.  Valorie cross-appeals a property distribution provision of the decree.  We affirm as modified on appeal and affirm on cross-appeal.

## I.    *Background Facts and Proceedings*

Kelly and Valorie married in 1998 and divorced in 2014.  They have no minor children.

At the time of trial, Kelly was fifty-four years old.  He is a high school graduate and has worked as an over-the-road truck driver for Wal-Mart for over twenty-two years.  Kelly earns between $75,000 and $81,000 per year, including bonuses for safety and longevity.  Wal-Mart also provides Kelly with an employee benefits package, including medical insurance and a retirement program.  Kelly is generally in good health.  Kelly lives in the marital home in Donnellson.

Valorie was sixty-three years old at the time of trial.  She has an associate of arts degree and a bachelor of science degree.  She worked as a social worker from 1996 to 1999, when she left that employment to spend time caring for Kelly's now-adult children.  Valorie's social work licensure has since lapsed. From 2005 to 2008, Valorie worked as a teacher at a denominational school. She then worked as a retail store clerk from about 2008 to 2013.  That position required Valorie to do some lifting and be on her feet up to seven hours a day, which usually left her exhausted at the end of the day.  Valorie left this employment when the parties separated in August 2013, and she relocated to Wellman where she lives with her adult son and his family.  She helps prepare

meals and takes care of the grandchildren. Valorie has several medical conditions that affect her employability, including arthritis, conditions consistent with fibromyalgia, anxiety, instability in her left knee, and neuropathy in her feet caused by her treatment for breast cancer in 2005.

Kelly filed a petition for dissolution of marriage in August 2013. The district court entered an order on temporary matters, ordering Kelly to pay Valorie $1200 per month in temporary spousal support and $2000 of Valorie's attorney fees.

The district court entered a decree dissolving the parties' marriage in September 2014. The parties had entered a pretrial stipulation which essentially resolved the issues of distribution of property with the exception of the equity in the marital home—they agreed on the value of the home ($150,000), but disputed what credit, if any, Kelly would receive for premarital funds he contributed to the purchase of the home. The court approved the settlement and adopted its provisions in the decree. The pretrial stipulation resulted in Valorie receiving half of Kelly's 401k (after a credit to Kelly for his premarital contribution) and Kelly making a personal property equalization payment to Valorie in the amount of $23,500.

The court credited Kelly with a "premarital contribution" of $73,500, and accordingly ordered Kelly be awarded the first $73,500 of equity from the marital home. The court divided the remaining equity in the home ($76,500) equally between the parties, and ordered Kelly to make an equalization payment to Valorie in the amount of $38,250 (resulting in a total equalization payment from Kelly to Valorie of $61,750).

The court ordered Kelly to pay spousal support to Valorie in the amount of $1500 per month until Kelly reached age sixty-six years ten months, and $525 per month thereafter until the death of either party or Valorie remarried. The court ordered each party to pay their own attorney fees.

Kelly appeals, challenging the amount and duration of his spousal support obligation. Valorie cross-appeals, challenging the amount of premarital contribution credit the court awarded to Kelly. Additional facts will be set forth below as relevant to these issues.

## II. Standard of Review

We review this equity action involving the dissolution of a marriage de novo. Iowa R. App. P. 6.907; *In re Marriage of McDermott*, 827 N.W.2d 671, 676 (Iowa 2013). Accordingly, we examine the entire record and decide anew the legal and factual issues properly presented and preserved for our review. *McDermott*, 827 N.W.2d at 676. We give weight to the findings of the district court, particularly concerning the credibility of witnesses; however, those findings are not binding upon us. *Id.*; *see also* Iowa R. App. P. 6.904(3)(g). Only when there has been a failure to do equity will we disturb the district court's ruling. *McDermott*, 827 N.W.2d at 676.

## III. Spousal Support

On appeal, Kelly challenges the district court's award of spousal support to Valorie, claiming it is inequitable under the circumstances of this case. He takes issue with the "large" amount and "excessive" duration of support ordered by the court. Kelly requests the decree be modified to require him to pay Valorie "rehabilitative support of $500 per month for a period of five years."

Spousal support is not an absolute right—it depends upon the circumstances of a particular case. *In re Marriage of Schenkelberg*, 824 N.W.2d 481, 486 (Iowa 2012). "[P]rior cases are of little value in determining the appropriate alimony award." *In re Marriage of Becker*, 756 N.W.2d 822, 825 (Iowa 2008). A district court has considerable latitude when making an award of spousal support. *Schenkelberg*, 824 N.W.2d at 486. We will disturb the court's ruling only when there has been a failure to do equity. *Id.*

The amount of spousal support is to be calculated equitably based upon all the factors contained in Iowa Code section 598.21A(1) (2013).[1] Here, the district court specifically discussed factors under section 598.21A of particular importance in this case including the length of the parties' marriage (sixteen years), ages and health of the parties, property division, earnings and earning

---

[1] These include:
> a. The length of the marriage.
> b. The age and physical and emotional health of the parties.
> c. The distribution of property made pursuant to section 598.21.
> d. The educational level of each party at the time of marriage and at the time the action is commenced.
> e. The earning capacity of the party seeking maintenance, including educational background, training, employment skills, work experience, length of absence from the job market, responsibilities for children under either an award of custody or physical care, and the time and expense necessary to acquire sufficient education or training to enable the party to find appropriate employment.
> f. The feasibility of the party seeking maintenance becoming self-supporting at a standard of living reasonably comparable to that enjoyed during the marriage, and the length of time necessary to achieve this goal.
> g. The tax consequences to each party.
> h. Any mutual agreement made by the parties concerning financial or service contributions by one party with the expectation of future reciprocation or compensation by the other party.
> i. The provisions of an antenuptial agreement.
> j. Other factors the court may determine to be relevant in an individual case.

Iowa Code § 598.21A.

capacities of the parties, tax consequences, and feasibility of self-sufficiency, and noted it had considered all the remaining factors "even if not specifically discussed."

Valorie was sixty-three at the time of trial, and has several medical conditions that affect her employability. We agree with the court's assessment that Valorie's ability to do manual work of the type she performed at her last job as a retail store clerk is "compromised by her physical condition." We also agree Valorie's age and "long absence" from social work "seriously diminish[ ]" her opportunities in that profession.

Although Valorie will need to find some type of work—even if only part-time—to enable her to enjoy a lifestyle similar to that which the parties enjoyed during their sixteen-year marriage, the fact remains that Valorie is dependent upon Kelly for support. Kelly is able to provide support and it is equitable for him to do so. He was fifty-four years old at the time of trial, in good health, and has been steadily employed in the same position for over twenty-two years. Kelly earns approximately $80,000 per year, including bonuses and other benefits.

Kelly claims the court failed to properly consider the effect of the property distribution upon Valorie's need for support and his ability to pay. We acknowledge Kelly will likely have to take out a mortgage on his home to make an equalization payment to Valorie. Valorie is currently living with her adult son and his family and enunciated her desire to funnel that money toward purchasing her own home. As will be discussed more below, Kelly will retain a large portion of the equity in the home, even after the equalization payment is made to Valorie.

We further observe Kelly underestimates his net monthly income by nearly $2000. Kelly's Exhibit 1, a collection of paystubs, shows that in the month preceding the dissolution trial, Kelly's "net pay" was $5578.80. Even taking Kelly's estimated monthly expenses of $3719.52—a number which *includes* Kelly's estimated expense for a "new mortgage obligation" he presumes he will have—this would leave Kelly an excess of $359.28 after he paid Valorie $1500 in spousal support.

After considering all the facts and circumstances of this case, and after taking into consideration all appropriate factors, we find the district court's spousal support award of $1500 per month, although generous, is equitable. We therefore affirm the amount of the spousal support award.

We next consider the duration of the award. The district court ordered: "Kelly's obligation to pay alimony shall terminate upon the death of either party. Finally, there shall be a presumption that alimony will terminate if Valorie remarries." Lifetime alimony awards are typically reserved for long-term marriages, i.e., those marriages lasting twenty or more years. *See In re Marriage of Gust*, 858 N.W.2d 404, 410-12 (Iowa 2015). "[T]he shorter the marriage, the less likely a court is to award traditional spousal support." *Id.* at 410. The district court characterized the parties' sixteen-year marriage as a "medium-length marriage," nevertheless, the court awarded lifetime spousal support to Valorie.

We agree this was not a long-term marriage. After considering all the facts and circumstances of this case, and after taking into consideration all appropriate factors, we find the lifetime award of spousal support is inappropriate as it fails to do equity. We conclude the spousal support award should terminate

when Kelly reaches age sixty-six years and ten months or retires, whichever occurs later.[2] We therefore modify the decree to provide that the spousal award shall terminate when Kelly reaches age sixty-six and ten months or retires (whichever is later), or upon the death of either party or Valorie's remarriage if either occurs prior to the time Kelly reaches age sixty-six and ten months or retires.

## IV.     *Premarital Contribution*

On cross-appeal, Valorie challenges the premarital contribution credit of $73,500 of equity from the marital home the court awarded to Kelly, which the court based upon Kelly's contribution of the proceeds from the sale of his premarital home and the proceeds from the sale of his Wal-Mart stock into the parties' purchase of the marital home. Valorie claims that equity in the home allocated to Kelly was a marital asset that should be split between the parties, and she requests the court modify the decree to award her "an additional $36,750 property award."

Iowa Code section 598.21(5) requires the court to divide "all property, except inherited property or gifts received by one party" equitably between the parties. "This broad declaration means the property included in the divisible estate includes not only property acquired during the marriage by one or both of the parties, but property owned prior to the marriage by a party." *In re Marriage*

---

[2] Retirement may trigger termination of alimony, even in cases of long-term marriages where traditional alimony is found to be appropriate. *Gust*, 858 N.W.2d at 414 ("There is also authority for the proposition that traditional spousal support may terminate upon reaching retirement.").

*of Schriner*, 695 N.W.2d 493, 496 (Iowa 2005) (citing *Brainard*, 523 N.W.2d at 616).

In other words, premarital property is not set aside like gifted and inherited property. *See Fennelly*, 737 N.W.2d at 102; *In re Marriage of Miller*, 552 N.W.2d 460, 465 (Iowa Ct. App. 1996). The district court should not separate a premarital asset from the divisible estate and automatically award it to the spouse who owned it prior to the marriage. *See Fennelly*, 737 N.W.2d at 102; *In re Marriage of Sullins*, 715 N.W.2d 242, 247 (Iowa 2006). Rather, property brought into the marriage by a party is merely a factor among many to be considered under section 598.21(5). *See Schriner*, 695 N.W.2d at 496. "This factor may justify full credit, but does not require it." *Miller*, 552 N.W.2d at 465. Other factors under section 598.21(5) include the length of the marriage, contributions of each party to the marriage, the age and health of the parties, each party's earning capacity, and any other factor the court may determine to be relevant to any given case. *See Fennelly*, 737 N.W.2d at 102.

At trial, the parties agreed on the value of the marital home ($150,000), but disputed what credit, if any, Kelly would receive for premarital funds he contributed to the purchase of the home. The court credited Kelly with a "premarital contribution" of $73,500, and accordingly ordered Kelly be awarded the first $73,500 of equity from the marital home. The parties agreed the value of Kelly's Wal-Mart stock in 1998 before he cashed it out and used the proceeds toward the marital home was $31,744.23. And at trial, Valorie agreed some $30,000 of the proceeds from the sale of Kelly's premarital home went to pay off a loan they used to purchase the marital home. Valorie further testified she

received approximately $5000 in proceeds from the sale of her premarital home, which she used to pay off a car Kelly purchased her for Christmas. We further observe the court divided the remaining equity in the home ($76,500) equally between the parties, and ordered Kelly to make an equalization payment to Valorie in the amount of $38,250 (resulting in a total equalization payment from Kelly to Valorie of $61,750).

Under these circumstances, considering the applicable factors set forth in section 598.21(5) as well as the personal property equalization payment stipulated to by the parties, we believe the court's decision to credit Kelly for his premarital contribution to the marital home was equitable. We affirm on this issue.

## V. *Conclusion*

We affirm as modified on appeal and affirm on cross-appeal. Costs are assessed equally between the parties.

**AFFIRMED AS MODIFIED ON APPEAL; AFFIRMED ON CROSS-APPEAL.**