**IN THE COURT OF APPEALS OF IOWA**

No. 19-1655
Filed April 1, 2020

**IN RE THE MARRIAGE OF KIMBERLIN PETTUS
AND CHRISTOPHER PETTUS**

**Upon the Petition of
KIMBERLIN PETTUS,**
        Petitioner-Appellant,

**And Concerning
CHRISTOPHER PETTUS,**
        Respondent-Appellee.
_____

        Appeal from the Iowa District Court for O'Brien County, Don E. Courtney,

Judge.

        Kimberlin Pettus appeals from the decree dissolving her marriage.

**AFFIRMED.**

        Thor J. Klinker of Smith, Grigg, Shea & Klinker, P.C., Primghar, for

appellant.

        Matthew G. Sease of Sease & Wadding, Des Moines, for appellee.

        Considered by Vaitheswaran, P.J., and Doyle and May, JJ.

**MAY, Judge.**

Kimberlin Pettus appeals from the decree dissolving her marriage to Christopher Pettus. She challenges the district court's physical care determination, the amount of child support awarded, and the district court's determination regarding attorney fees. She also seeks appellate attorney fees. We affirm.

Kimberlin and Christopher married in 2016. The same year, Christopher adopted Kimberlin's child, C.P., who has special medical and educational needs. During the marriage, the couple had two more children. They elected to open enroll C.P. into a neighboring school district because of its strong special education program. They also placed their younger two children in daycare in the same community.

But eventually the couple separated. Kimberlin moved to a neighboring town about thirty miles away. Kimberlin commenced this dissolution action.

The matter proceeded to trial. Kimberlin asked for physical care with visitation for Christopher. Christopher asked for joint physical care. In the alternative, Christopher requested physical care with visitation for Kimberlin.

In its decree, the district court awarded joint physical care. Kimberlin appeals.

We review dissolution proceedings de novo. *In re Marriage of McDermott*, 827 N.W.2d 671, 676 (Iowa 2013). However, we afford deference to the district court's factual findings, "particularly when considering the credibility of witnesses, but we are not bound by them." *In re Marriage of Fox*, 559 N.W.2d 26, 28 (Iowa 1997); *see also Hensch v. Mysak*, 902 N.W.2d 822, 824 (Iowa Ct. App. 2017).

Kimberlin argues the district court erred in awarding the parties joint physical care of their children.[1] In assessing her claim, we consider what physical care arrangement is in the children's best interests. *See* Iowa R. App. P. 6.904(3)(o). "The objective of a physical care determination is to place the children in the environment most likely to bring them to health, both physically and mentally, and to social maturity." *In re Marriage of Hansen*, 733 N.W.2d 683, 695 (Iowa 2007).

Caselaw provides "a nonexclusive list of factors to be considered when determining whether a joint physical care arrangement is in the best interests of the child[ren]." *In re Marriage of Berning*, 745 N.W.2d 90, 92 (Iowa Ct. App. 2007).

> The factors are (1) "approximation"—what has been the historical care giving arrangement for the child[ren] between the two parties; (2) the ability of the spouses to communicate and show mutual respect; (3) the degree of conflict between the parents; and (4) "the degree to which the parents are in general agreement about their approach to daily matters."

*Id.* (quoting *Hansen*, 733 N.W.2d at 697–99). "The court may also consider any other relevant factors." *In re Marriage of Monat*, No. 18-0884, 2019 WL 1057310, at *3 (Iowa Ct. App. Mar. 6, 2019).

We address each relevant factor. The approximation factor favors joint physical care. Historically, both parties have been actively involved in the children's lives. They shared the child-rearing duties. Joint physical care would best continue this arrangement.

---

[1] Kimberlin argues the district court applied the incorrect legal standard. We agree. The court applied the standard for a modification action, not the standard for an initial custody and physical care determination. This was error.

And Kimberlin and Christopher can communicate important information regarding the children. We acknowledge Kimberlin would like Christopher to have more open communication with her. We hope the lines of communication will expand with time. But for now, the parties are sufficiently able to communicate regarding critical information.

Moreover, the record shows little conflict between the parties. And Kimberlin agreed a joint physical care arrangement could work.

The record is also absent any major differences in parenting styles. Christopher does maintain a different sleep schedule for the children. But it is not so drastically different that it makes joint physical care infeasible.

In addition to the four factors discussed above, we also consider special circumstances relevant to this particular family. *See Monat*, 2019 WL 1057310, at *3. We note the parties no longer live in the same town. So, under a shared physical care arrangement, the children will be members of two communities. Moreover, they attend school/daycare in a third community. This may complicate future involvement in extra-curricular activities. But the children's school/daycare is roughly halfway in between the parties' homes. So the children could participate in activities in that community to ease any transportation issues.

We also note the oldest child, C.P., has unique medical needs. In the past, she has not always disclosed her symptoms to Christopher while in his care. This is concerning because, in one instance, she later required surgery to address the underlying issue. As we read Christopher's testimony, though, he appears to understand the seriousness of C.P.'s medical needs. Moving forward, we trust he

will provide C.P. with an environment that makes her feel comfortable to discuss her medical conditions and symptoms with him. This will be critical to C.P.'s health.

After considering all the relevant factors, we agree with the district court that a joint physical care arrangement is in the children's best interests.[2]

Kimberlin also challenges the amount of child support awarded. Specifically, she argues the district court under-valued Christopher's annual income and over-valued hers. With respect to Christopher's income, she notes the district court failed to consider income from Christopher's second job as a trucker, which he quit about three weeks prior to trial. But Christopher remains employed full time at his primary job. And he quit his trucking job to spend more time with the children. We do not consider this voluntary underemployment or unemployment, which would prompt the court to impute additional earning potential. *See* Iowa Ct. R. 9.11(4). So we conclude the district court did not err when determining Christopher's income based on his full-time job earnings.

Kimberlin also claims the district court erred in finding her income is greater than the $15,080.00 gross annual income to which she stipulated. Instead, the court found Kimberlin made $19,760.00 as alleged by Christopher. Kimberlin testified she works from 8:00 a.m. to 3:15 p.m. as a para-educator during the school year at a rate of $11.00 per hour. She also testified she recently found a

---

[2] Kimberlin raises concerns regarding the sleeping arrangements at Christopher's house because a basement bedroom does not have an egress window. She also alleges Christopher has substance-abuse issues. But we note she proposed a physical care arrangement that would provide Christopher with two months' visitation over the summer months. Given her proposal to leave the children with him for two months' time, we find Kimberlin's concerns regarding Christopher's substance use and the sleeping arrangement to be minimal.

second job working in a daycare at a rate of $10.58 per hour. She will not have a regular schedule at the daycare; rather, she will work on an as-needed basis. Moreover, we see no reason Kimberlin would not work during the summer months—particularly when the children are in Christopher's care. Given these circumstances, the district court's income findings were within the range of evidence. So we do not disturb the child support award.

Next, Kimberlin argues the district court abused its discretion in not awarding her attorney fees. A district court's attorney fee award is reviewed for an abuse of discretion. *In re Marriage of Francis*, 442 N.W.2d 59, 67 (Iowa 1989). The award must be fair and reasonable and based on the parties' ability to pay. *See In re Marriage of Miller*, 552 N.W.2d 460, 465 (Iowa Ct. App. 1996). After review, we find the district court did not abuse its discretion in declining to award Kimberlin attorney fees.

Finally, we turn to Kimberlin's request for appellate attorney fees. Appellate attorney fees are awarded upon our discretion and are not a matter of right. *See In re Marriage of Okland*, 699 N.W.2d 260, 270 (Iowa 2005). When considering whether to exercise our discretion, "we consider 'the needs of the party seeking the award, the ability of the other party to pay, and the relative merits of the appeal.'" *McDermott*, 827 N.W.2d at 687 (quoting *Okland*, 699 N.W.2d at 270). After review, we decline to award Kimberlin appellate attorney fees.

**AFFIRMED.**