## IN THE COURT OF APPEALS OF IOWA

No. 22-1949
Filed July 26, 2023

IN RE THE MARRIAGE OF CARRIE L. BURMEISTER
AND KURT L. BURMEISTER

Upon the Petition of
**CARRIE L. BURMEISTER,**
    Petitioner-Appellee,

**And Concerning**
**KURT L. BURMEISTER,**
    Respondent-Appellant.

_____

Appeal from the Iowa District Court for Louisa County, John M. Wright, Judge.

Kurt Burmeister appeals the division of property in the decree dissolving his marriage to Carrie Burmeister. **AFFIRMED.**

Andrew B. Howie of Shindler, Anderson, Goplerud & Weese, P.C., West Des Moines, for appellant.

Maegan M. Gorham of Lane & Waterman LLP, Davenport, for appellee.

Considered by Schumacher, P.J., and Chicchelly and Buller, JJ.

**CHICCHELLY, Judge.**

Kurt Burmeister appeals the division of property in the decree dissolving his marriage to Carrie Burmeister.  He contests the award of a $107,026 equalization payment to Carrie, challenging the inclusion of his premarital property in the property division and the valuation of the property.  Following a de novo review, we affirm the trial court's division of property and the resulting equalization payment.  We decline Carrie's request for appellate attorney fees.

## I.       Background Facts and Prior Proceedings.

Carrie and Kurt began their relationship in July of 2011.  After a few months of dating, Carrie began staying at Kurt's home in Grandview, where she would cook, clean, do household chores, and help care for Kurt's minor son.  In early 2013, Carrie assisted in the start up of Kurt's business, CJ Tire & Service, by performing manual labor to remodel the planned site of the business.  In September of 2015, Kurt purchased a house in Columbus Junction colloquially referred to by the couple as "the Barn House".  Kurt and Carrie moved into the Barn House with Kurt's minor son and were married soon after.

Kurt obtained a bridge loan for $51,424 that he used as a down payment to purchase the Barn House.  He satisfied the loan by selling his home in Grandview for $123,500.   Kurt also used $53,600 from the same sale to complete improvements to the Barn House.  However, expenditures on these improvements were withdrawn from the couple's joint bank account, an account controlled by Kurt into which all of Carrie's income was automatically deposited.  Throughout the marriage, Carrie worked and contributed financially to the household through this joint bank account.  Carrie did not earn wages for a period of the marriage.  But

during this time, Carrie worked at CJ Tire & Service Monday through Friday from 9:00 a.m. to 5:00 p.m. and Saturdays from 7:00 a.m. to noon without pay.

Carrie petitioned to dissolve the marriage in May 2021. During the trial, Kurt argued that the down payment he provided for the Barn House, the $53,600 he obtained by selling his personal property to fund improvements on the house, and other smaller items should be considered premarital property and set aside from the division between the parties. Carrie conceded, and the trial court agreed, that the down payment for the barn house should be excluded from the divisible property. However, the trial court included the $53,600 and other small items Kurt objected to in its calculation of the total marital assets. Because Kurt was awarded a greater portion of the marital property, the court ordered him to pay Carrie a $107,026 equalization payment.

## II. Scope of Review.

We review dissolution proceedings de novo. *See* Iowa R. App. P. 6.907; *In re Marriage of Mauer*, 874 N.W.2d 103, 106 (Iowa 2016). We give weight to the district court's fact findings, even though they are not binding. *See Mauer*, 874 N.W.2d at 106. We only contradict the findings of the district court if they fail to yield an equitable result. *See id.*

## III. Property Division.

Upon the dissolution of a marriage in Iowa, the court divides all property, except inherited property and gifts received by one party, equitably between the parties. Iowa Code § 598.21 (2021). An equitable division is not necessarily an equal distribution of the assets. *In re Marriage of Hoak*, 364 N.W.2d 185, 194 (Iowa 1985). Instead, the court must determine what is equitable under the

circumstances. *Id.* The court makes this determination by considering the factors listed in Iowa Code section 598.21.

Kurt contends that the trial court included in the divisible marital property certain items that should have been set aside as premarital property. He claims the $53,600 in revenue from the sale of his premarital home that he spent on improvements to the Barn House should be fully credited to him. Additionally, Kurt challenges the court's inclusion of a 2004 GMC vehicle ($6500), inclusion and valuation of a Mediapolis Savings Bank account ($17,088), and inclusion and valuation of the couple's livestock ($6000). Kurt concludes that by excluding and revaluing these items, the equalization payment should be reduced from $107,026 to $66,701.

### A.     Premarital Property

Kurt argues that because there was a discrepancy in the amount of property each party brought into the marriage and the marriage was of short duration, certain premarital property should have been set aside from the divisible assets. However, Iowa's statutory scheme requires the court to divide *all* property of the parties, including property owned prior to the marriage. *In re Marriage of Fennelly*, 737 N.W.2d 97, 102 (Iowa 2007). The trial court may not "separate the [premarital] asset from the divisible estate and automatically award it to the spouse that owned the property prior to the marriage." *In re Marriage of Sullins*, 715 N.W.2d 242, 247 (Iowa 2006). The "property brought to the marriage by each party" is only one of the factors considered by the trial court when dividing marital assets. Iowa Code § 598.21; *Fennelly*, 737 N.W.2d at 102.

The trial court acted equitably by including Kurt's premarital property in the division of marital assets. Although Kurt brought more financial assets into the marriage than Carrie and the couple's marriage was not lengthy, Carrie made significant contributions to the marriage. A party's contribution to their marriage is measured by more than income. *In re Marriage of Miller*, 552 N.W.2d 460, 465 (Iowa Ct. App. 1996). In denying Kurt's motion to enlarge and amend, the trial court reasoned that "[Carrie] provided convincing evidence that she financially contributed to the household during the premarital relationship and during the marriage. Furthermore, she contributed her services to the household, including caring for [Kurt]'s child." We defer to the trial court's findings regarding Carrie's contribution to the marriage, as well as its determination that this contribution warranted the division of the property. We note especially that the $53,600 Kurt received from selling his premarital home was placed in a joint bank account where Carrie's income was also directly deposited, becoming intermingled with marital assets. Additionally, Carrie's unpaid labor contributed to the establishment of Kurt's business and its day-to-day operations. Considering her contribution to the business, we find it was equitable for the trial court to include the value of the Mediapolis Savings Bank account, which belongs to the business, in the marital property division.

Kurt also challenges the trial court's consideration of the cohabitation period that preceded the couple's marriage. He cites *In re Marriage of Naylor*, in which the appellant contended a "period of cohabitation prior to their marriage should be considered as part of the marriage for the purposes of dividing property." No. 17-0770, 2018 WL 5850223, at *3 (Iowa Ct. App. Nov. 7, 2018). In rejecting

that argument, the court noted that Iowa Code section 598.21 "does not identify premarital cohabitation as a relevant consideration." *Id.*

*Naylor* is distinguishable because the trial court did not equate Carrie and Kurt's cohabitation period with marriage. Rather, the court merely looked to their history for information about Carrie's relationship to the property in question and the extent of her past contributions. Although the statute does not specifically mention consideration of a cohabitation period, it does include a provision allowing the court to include other factors it determines to be relevant to the individual case. *See* Iowa Code § 598.21(5)(m). Here, the couple's cohabitation prior to their marriage is relevant because it establishes Carrie's continued contributions to the care of Kurt's children and the building of his business. Again, the latter contribution is especially pertinent to the division of the Mediapolis Savings Bank account. But even without considering the parties' premarital relationship, it is equitable to divide Kurt's premarital property based on the contributions Carrie made during the marriage.

### B. Valuation

Finally, Kurt challenges the trial court's valuation of the Mediapolis Savings Bank account and the couple's livestock. He claims that the Mediapolis Savings account was a business account that could change significantly in value day-to-day depending on the operations of C.J. Tire and Service. He also complains that the trial court failed to credit his testimony that the cattle are worth $2800, not $6000.

"Ordinarily, a trial court's valuation will not be disturbed when it is within the range of permissible evidence." *In re Marriage of Hansen*, 733 N.W.2d 683, 703

(Iowa 2007). "Although our review is de novo, we ordinarily defer to the trial court when valuations are accompanied by supporting credibility findings or corroborating evidence." *Id.*

Regarding the Mediapolis Savings Bank account, Kurt argues that the account was misvalued but fails to state how this court should value the account.[1] Kurt instead complains that the trial court's valuation, which is based on the account balance as of May 26, 2022, did not reflect the account's true value because the account was regularly depleted to pay for inventory and other expenses. This argument is refuted by Kurt's own testimony that, "The first of the month, I could have $30,000 in [the account]. I could have $35,000 in there. But all my parts and tires and most of my bills are due on the 10th. So when I make payments out on the 8th, I might have $5500 left." The trial court addressed Kurt's argument in its denial of his motion to reconsider, enlarge, and amend. It reasoned, "As for the business bank account the court found [Carrie]'s evidence more convincing. The court can accept that the bank account fluctuated. However, there is nothing that convinces the court that it did so significantly day by day." Ultimately, the court valued the account at $17,088, which was the account's actual statement balance three weeks prior trial.

We find the court's valuation easily falls within the range of permissible evidence. *See In re Marriage of McDermott*, 827 N.W.2d 671, 679 (Iowa 2013). Not only was the trial court's valuation of $17,088 close to the account's average value of $14,750 based upon the high and low figures provided by Kurt in his

---

[1] Kurt initially argued that the account should be entirely set aside and did not provide an alternative valuation for the account should this court deny that request.

testimony, it was the actual statement balance of the account just prior to the date of trial. Moreover, Kurt fails to provide additional information to refute the findings of the trial court. Presumably, he could have submitted the account's transaction history to directly establish that the account fluctuates day to day. However, he did not do so. We therefore defer to the well-reasoned determination of the trial court and find that it did not err in valuing the Mediapolis Savings Bank account at $17,088.

Regarding the cattle, we find that the trial court's valuation of $6000 was within the range of permissible evidence. Kurt claims that the couple had three cows at the time of trial. This contention is directly contradicted by Kurt's testimony that there were three cows and three calves at the time of trial.[2] The trial court's valuation of the cattle was based on Kurt's testimony that each cow was worth $1200 and each calf was worth $800. Because the court's valuation is in line with the evidence, it did not err in valuing the cows/calves at $6000.

Overall, the trial court's division of the property was equitable and its valuation of the property was within the range of permissible evidence. On this basis, we affirm the $107,026 equalization payment.

### IV. Attorney Fees

Carrie requests an award of appellate attorney fees. "Appellate attorney fees are not a matter of right, but rather rest in this court's discretion." We consider "the needs of the party seeking the award, the ability of the other party to pay, and the relative merits of the appeal." *In re Marriage of Geil*, 509 N.W.2d 738, 743

---

[2] Although the parties had only three cows when Carrie left, each birthed a calf before the trial.

(Iowa 1993).  Because Kurt's appeal was not frivolous and Carrie is in a sufficiently stable financial position to pay her own attorney fees, we decline to award Carrie appellate attorney fees.

**AFFIRMED.**