**IN THE COURT OF APPEALS OF IOWA**

No. 15-1694
Filed June 15, 2016

**IN RE THE MARRIAGE OF SETH H. CRAWFORD
AND TRICIA L. FAIRCHILD**

**Upon the Petition of
SETH H. CRAWFORD,**
        Petitioner-Appellant,

**And Concerning
TRICIA L. FAIRCHILD,**
        Respondent-Appellee.
_____

        Appeal from the Iowa District Court for Scott County, Henry W. Latham II,

Judge.


        Seth Crawford appeals from the district court's findings of fact,

conclusions of law, and decree of dissolution.  **AFFIRMED AS MODIFIED.**


        Thomas D. Hobart and Peter J. Gardner of Meardon, Sueppel & Downer,

P.L.C., Iowa City, for appellant.

        Catherine Zamora Cartee and Nathan M. Legue of Cartee & McKenrick,

P.C., Davenport, for appellee.


        Heard by Danilson, C.J., and Vaitheswaran and Tabor, JJ.

**DANILSON, Chief Judge.**

Seth Crawford appeals from the district court's findings of fact, conclusions of law, and decree of dissolution of marriage. He contests the court's rulings regarding custody, visitation, child support, alimony, attorney fees, division of personal property, and the amount of the equalization payment. We modify the decree to eliminate the award of alimony and the award and requirement to divide Seth's pension account. On all other issues raised, we affirm.

## I. Background Facts and Proceedings.

Seth Crawford and Tricia Fairchild were married in 2011, but had maintained a romantic relationship since 2001. The parties have one child, E.K.C., born in 2013.

Seth is a high-level executive at Deere & Company (Deere), where he has worked for eighteen years. Seth's position requires him to spend a fair amount of his time traveling. Seth testified that his base salary is about $240,000 or $250,000 per year. In the years 2010-2014, his adjusted gross income was 2011—$692,518; 2012—$479,334; 2013—$756,157; and 2014—$279,097. Seth's lower income in 2014 was due to the loss of his yearly bonus[1] because he failed to timely report a romantic relationship with another Deere employee within the same sub-organization.

At the time of trial, in addition to income from his base salary, Seth had assets including: a 401(k) account; a Deere pension; tax-deferred income accounts; stock options from Deere; brokerage accounts with UBS and E-Trade;

---

[1] Seth testified the bonus would have been greater than his annual salary.

a Health Savings Account; an ownership interest in two limited liability corporations—3501 LEB, L.L.C. and 960 W River Center, L.L.C.—for purposes of owning property in Michigan; cash assets; and property including the marital residence. Seth provided, and the district court relied on, an exhibit listing the parties' assets and liabilities at the time of marriage in 2011 and at the time of dissolution in 2015. The exhibit attributed assets to both parties in excess of $2.4 million in 2015.

Tricia had completed a majority of her residency as a family practice doctor at the time of the dissolution proceedings. While in her residency, Tricia grossed $53,000 annually.[2] Upon completion of her residency, Tricia's earning capacity will increase to $200,000 gross per year. Tricia works approximately forty-five hours per week.

Before the parties were married, Seth supported Tricia while she was in medical school. She lived in a home owned by Seth and he paid $109,000 toward her school loans.

The parties' separation was not without conflict. Tricia provided evidence of Seth's harsh communication, and testified she was frightened of him.

The evidence also exhibits Seth exercised controlling behavior over the parenting of E.K.C. Seth completed extensive and detailed care notes while E.K.C. was in his custody, and expected Tricia to do the same. He expected the nannies to encourage E.K.C. to reach very specific age milestones as provided in the nanny contract. Seth also did not always keep Tricia properly informed. Seth

---

[2] The district court found that Tricia's gross annual income was $83,000 but this may have been a typographical error as the undisputed evidence reflects her highest income to be $53,000.

acknowledged he lied to Tricia about where he was with the child about half a dozen times. On a long visit with E.K.C., Seth informed Tricia that he was taking the child to see his family in Minnesota, and did not tell Tricia he intended to leave E.K.C. in the care of his parents while he traveled to Germany for a large portion of the visit.

Tricia contends Seth dissipated marital assets by making payments for the benefit of his girlfriend and disbursing marital funds in investment activities.

Seth contends Tricia cannot set aside her hostility toward his continuing relationship with the Deere employee in order to respect his role as a parent to E.K.C. Seth claims he fears Tricia intends to change E.K.C.'s last name and move out of the state.

The parties exercised shared physical care during the pendency of the dissolution pursuant to a temporary order. In the original petition for dissolution, Seth did not request shared physical care. However, in the first amended petition Seth requested joint physical care, or, in the alternative, physical care of E.K.C.

Trial was held April 21–22, and June 18, 2015. The district court's findings of fact, conclusions of law, and decree of dissolution placed the child in the parties' joint legal custody and Tricia's physical care. The decree set a liberal visitation schedule for Seth, including visitation on Tuesday and Thursday evenings, every other weekend, alternating holidays, and two weeks of uninterrupted summer visitation. Seth was ordered to provide all transportation for visitation, and to pay $2430 per month in child support.

Seth was also ordered to pay rehabilitative alimony to Tricia in the amount of $1500 per month for a one-year period. The court awarded the parties all personal property in their possession, and granted Tricia's request for additional items from the marital home and apartment.[3] The court also ordered Seth to pay Tricia an equalization payment in the amount of $257,330. Seth was ordered to pay $40,000 toward Tricia's attorney fees.

Seth now appeals nearly every provision of the decree.

## II. Standard of Review.

Other than the award of attorney fees, we review this equity action involving the dissolution of a marriage de novo. *In re Marriage of McDermott*, 827 N.W.2d 671, 676 (Iowa 2013). "We give weight to the findings of the district court, especially to the extent credibility determinations are involved." *In re Marriage of Hansen*, 733 N.W.2d 683, 690 (Iowa 2007). "[W]e will disturb a district court determination only when there has been a failure to do equity." *In re Marriage of Mauer*, 874 N.W.2d 103, 106 (Iowa 2016).

We review the award of attorney fees for an abuse of discretion. *In re Marriage of Sullins*, 715 N.W.2d 242, 255 (Iowa 2006).

## III. Custody and Visitation.

Seth first disputes the district court's determinations regarding custody and visitation. Seth asserts that the court should award joint physical care, or, in the alternative, place physical care with Seth. Seth also contends that the

---

[3] Seth originally obtained an apartment at the Blackhawk Hotel for purposes of his work. However, eventually, his paramour from Deere moved into the apartment. Seth used substantial funds to purchase furnishings and other items for the apartment.

visitation schedule is extremely restrictive, and would be impossible if Tricia moved out of the State of Iowa.

At the request of any party, the court must consider joint physical care, and make specific findings when the request for joint physical is denied. *Hansen*, 733 N.W.2d at 692. When considering a joint physical care arrangement, courts apply the traditional best-interest-of-the-child standard. *Id.*; *see also* Iowa Code § 598.41(3) (2013).[4] "The objective of a physical care determination is to place the child[ ] in the environment most likely to bring [the child] to health, both physically and mentally, and to social maturity." *Hansen*, 733 N.W.2d at 695.

Upon consideration of joint physical care, the district court stated:

> The court finds it concerning that Seth's inability to communicate truthfully with Tricia may impact their ability to co-parent E.K.C. effectively. Further, the court finds Seth's controlling nature may be effective in the corporate world, but is not effective in co-parenting a child with separated or divorced parents. The court finds this is not a character flaw in any respect as it relates to Seth, but it truly impacts upon the ability to effectively co-parent. The court finds Seth to be very rigid in his demands and he also becomes easily frustrated, which is evidenced from his own testimony during the court trial and during the taped discussions between himself and Tricia. The court's observations are very concerning as to his ability to be a parent in a shared care relationship.

Although both parents are capable and loving parents, we agree with the district court's insightful conclusions and ultimate decision that joint physical care is not in the best interests of E.K.C. The record is replete with examples of

---

[4] Factors to be considered under section 598.41(3) include: whether each parent would be a suitable custodian; whether the parents can communicate regarding the child's needs; whether both parents have actively cared for the child before and since the separation; and whether each parent can support the other parent's relationship with the child.

Seth's attempts to undermine Tricia as a parent. The district court summarized some of these concerns in stating:

> The court finds Seth's request of using the cozi calendar application/program is just one indication of his controlling personality. Seth from his testimony made it clear he resents being questioned or challenged as to his beliefs or determinations as to the effective way to handle certain situations. This is evident in his decisions of how to handle finances and the care of E.K.C. Seth was quick to lose his patience and temper while testifying. This is further evidenced in the taped conversations he had with Tricia. The court finds this is not the basis for effective communication between parents for the best interest of E.K.C.

Additionally, Seth's inability to be truthful with Tricia regarding his whereabouts when E.K.C. is under his care and his excessive control over the parenting of E.K.C. fosters concern for the parties' ability to successfully co-parent.

Due to the high level of conflict during the parties' separation, the remaining hostility, and Seth's inability to communicate with and respect Tricia as a parent to E.K.C., joint physical care is not in E.K.C.'s bests interests. *See Hansen*, 733 N.W.2d at 700 (holding joint physical care is not in the best interests of the children because the distrust and high level of conflict between the parties, as well as the father's controlling personality, posed "a distinct danger that flare-ups in the relationship could disrupt the children's lives in a joint physical care context").

Additionally, we agree that physical care should be placed with Tricia. While both parties maintain demanding professions, Seth's work requires more travel and attendance at work activities outside normal working hours. More importantly, Tricia is more likely to respect Seth in his role as E.K.C.'s father and

to promote E.K.C.'s relationship with Seth. The district court found, and the record supports that Tricia has been viewed as the primary caregiver to E.K.C.

Placing physical care with Tricia will provide E.K.C. the structured and nurturing environment to foster the child's continued development and growth. And Seth's exercise of liberal visitation and joint legal custody will enable E.K.C. to maintain the benefits of Seth's continued involvement in E.K.C.'s life. Such an arrangement is in E.K.C.'s best interests.

Seth also disputes the district court's visitation schedule. He contends the court's award of visitation is extremely restrictive and would be impossible in the event Tricia moved out of state. Any speculation as to Tricia moving out of Iowa is not relevant to the current visitation schedule.[5]

Seth cites to the proposed visitation schedule included in his proposed relief. With the exception of slight deviations in pick-up and drop-off times, the proposed visitation schedule is nearly identical to the visitation schedule established by the district court. It is unclear what Seth is requesting be changed that would establish a less restrictive visitation schedule.

The district court's visitation schedule is equitable, and we will not disturb the terms imposed.

Seth also contests the district court's requirement that he provide transportation for visitation. He argues that this requirement reflects the court's placement of fault on Seth for the breakdown of the marriage. We are unconvinced by this assertion. It is not inequitable to place the responsibility for

---

[5] In the event Tricia did move out of Iowa, a petition for modification could be filed to address Seth's concerns.

transportation on Seth because such a requirement is not unduly burdensome while the parties remain living in the same city.

## IV. Child Support.

Seth next contends that the district court erred in awarding child support based on Seth's attributed income of $475,000. The district court reached this conclusion by considering Seth's annual salary in addition to a yearly bonus greater than Seth's annual salary and income from other business ventures. Seth asserts that the $475,000 income amount is not supported by the evidence.

"All income that is not anomalous, uncertain, or speculative should be included when determining a party's child support obligations." *In re Marriage of Nelson*, 570 N.W.2d 103, 105 (Iowa 1997). "When deciding whether bonuses are to be included in gross income, we examine the employment history of the payor over the past several years to determine whether the amount of money paid from year to year was consistent. If so the bonuses should be included in gross income." *Id.*

The district court determined that Seth's loss of the 2014 bonus constituted a voluntary reduction in income. We agree. Seth was responsible for violating the terms of his employment and incurring the loss of his 2014 bonus by his voluntary action of participating in an unreported relationship with a co-employee. Seth contends he was unaware of the time period during which he was to report his supervisory conflict. But apparently his employer thought he should know or otherwise his employer would not have withheld such a substantial bonus. According to Seth, the bonus would have exceeded his annual wages of approximately $240,000. Even if we do not describe the loss of

the bonus as a voluntary reduction in income, we believe it is fair to say Seth squandered the bonus income.

In any event, the district court did not inequitably determine Seth's attributed income. Seth explained his employment was not at risk. Moreover, nothing in the record shows that Seth will not continue to receive an annual bonus in future years. Seth earned consistent bonuses in the five years preceding 2014, and the bonuses should be included in determining his gross income.

The court could have determined the attributed income amount by averaging Seth's past income. *See In Marriage of Powell*, 474 N.W.2d 531, 534 (Iowa 1991). Based on the parties' federal tax returns for the years 2011 through 2014, their average adjusted gross income over the four-year period was $551,776 per year, including Seth's actual 2014 income without a bonus.[6] The parties filed jointly in 2011, 2012, and 2013, and filed separately in 2014. Any income attributed to Tricia while working in a residency would have been approximately $53,000 leaving the balance of the adjusted gross income attributed to Seth.[7] If we subtract Tricia's annual income of about $53,000 from the average adjusted income of both parties—$551,776—clearly the district court's determination that Seth's income was $475,000 per year was reasonable.

---

[6] Courts have averaged three years to determine income for purposes of applying the child support guidelines. *See, e.g., In re Marriage of Clifton*, 526 N.W.2d 574, 577 (Iowa Ct. App. 1994). However, due to the fluctuation in Seth's income and the unusually low income for 2014, which is unlikely to recur, we find it is reasonable to average his adjusted gross income from the past four years.

[7] We acknowledge that some of Seth's income was from distributions and sale of stock and not entirely from wages or bonus income.

Based on his attributed income, the district court ordered Seth to pay $2430 monthly in child support. The court reasoned:

> As discovered, the combined incomes of the parties is beyond the guidelines for determination of child support regardless if the lower income of $[5]3,000[8] or higher income of $200,000 is used as it relates to Tricia's income. The percentage required to arrive at the appropriate support is 10.392 percent. When applying this percentage to the income attributed to Seth, the calculation nets a child support amount of $2430 per month.

The district court's child support order is equitable, thus, we affirm.

**V. Alimony.**

Seth also asserts that the district court's award of rehabilitative alimony to Tricia was improper, and that Seth is entitled to reimbursement alimony. We conclude neither party is entitled to alimony.

Whether spousal support is justified under Iowa Code section 598.21(3) depends on the facts of each case. *In re Marriage of Weiss*, 496 N.W.2d 785, 787 (Iowa Ct. App. 1992). "Rehabilitative alimony is 'a way of supporting an economically dependent spouse through a limited period of re-education or retraining following a divorce, . . . .'" *In re Marriage of Probasco*, 676 N.W.2d 179, 184 (Iowa 2004) (citation omitted). The goal of rehabilitative alimony is for the dependent spouse to become self-supporting. *Id.*

Although Tricia was completing her residency at the time of trial, the evidence does not suggest she was not self-sufficient. The record also reflects in a short period of time Tricia will complete her training and her earning capacity will increase significantly. Further, Tricia will be not be burdened with repaying

---

[8] Again, according to the record of evidence, we determine that Tricia's income was only $53,000 not $83,000.

student loans, as her debt was paid shortly after the parties' were married. Additionally, although the parties had been in a relationship for some time, they were only married for a very brief period of time. Moreover, Tricia received temporary alimony during the pendency of this proceeding. Based on the facts of this case, rehabilitative alimony is not justified.

Reimbursement alimony for Seth is also not justified. Seth cites to *In re Marriage of Francis* in support of the contention that he is entitled to reimbursement alimony for his contribution to Tricia's medical education. 442 N.W.2d 59 (Iowa 1989). In *Francis*, the wife sacrificed her career upon the parties' agreement that she would care for their children and earn an income by caring for other children in their home, despite her having nearly completed a master's degree in early childhood development. *Id.* at 64.

Seth has not made comparable sacrifices. Although he contributed economically to Tricia's education, he continued to work and to earn a substantial income while Tricia was in school. Seth did not make extreme sacrifices to further Tricia's education. *See Weiss*, 496 N.W.2d at 788. Thus, Seth is not entitled to reimbursement alimony. His financial support towards Tricia's medical expenses by contributing $109,000 to pay her student loans is more properly a factor in determining an equitable property distribution.

We find an award of rehabilitative alimony to Tricia is not justified under the circumstances of this case and modify the district court's ruling in that respect. We affirm the denial of Seth's request for reimbursement alimony.

**VI. Property Distribution and Equalization Payment.**

Seth also asserts that the district court did not equitably divide the parties' personal property, and improperly determined the amount of the equalization payment.

The court must divide property equitably between the parties. Iowa Code § 598.21(5); *In re Marriage of Hoak*, 364 N.W.2d 185, 194 (Iowa 1985). Our task in reviewing de novo is to examine the entire record and adjudicate anew the issue of property distribution. *McDermott*, 827 N.W.2d at 676. "We will disturb the district court's 'ruling only when there has been a failure to do equity.'" *Id.* (citations omitted). Factors to be considered include the length of the marriage; property brought to the marriage by each party; contribution of each party to the marriage; the age and health of the parties; contribution by one party to the education of the other; each party's earning capacity; and tax consequences. Iowa Code § 598.21(5); *McDermott*, 827 N.W.2d at 678. "[W]e give strong deference to the trial court which, after sorting through the economic details of the parties made a fair division supported by the record." *In re Marriage of Vieth*, 591 N.W.2d 639, 641 (Iowa Ct. App. 1999).

Seth argues that by granting Tricia's request for specific items of personal property, the district court's order left the marital home virtually empty. However, the court stated that the decision regarding the division of property and grant of Tricia's request for certain property was intended to address Seth's dissipation of marital assets by purchasing property for the Blackhawk Hotel apartment. The court also considered credible Tricia's testimony that she was allowed limited access to the home after the parties' separation to obtain personal property.

Based on these considerations, the district court found it equitable to grant Tricia's request for certain personal property. We agree. We also note that Seth did not request any specific sum be tallied towards Tricia's side of the ledger for this personal property in calculating the equalization sum.

As to the equalization payment of $257,330, Seth contends the district court failed to properly consider the section 598.21(5) factors; should have attributed a negative net worth to Tricia at the time of the parties' marriage due to her student loans; should have required the transfer of the equalization payment to occur through a Qualified Domestic Relations Order (QDRO); improperly determined that Seth dissipated marital assets by taking out a loan against his 401(k); and should not have ordered that Seth's pension be divided. He also contends the equalization sum should have been fixed in the amount of $177,839.

Specifically, Seth claims the district court failed to consider:

1. This was a short marriage.
2. The difference in the property each party brought into the marriage.
3. Each parties' contribution towards the increase in net worth.
4. Each party is in good health and capable of earning at least $200,000.
5. Seth's contribution to Tricia's medical education cost.
6. Seth was required to refinance the family home.
7. The amount and duration of temporary support he paid.
8. The tax consequences Seth may incur to pay the equalization sum.

Tricia contends the district court was conservative in its calculations related to the equalization payment. Tricia argues the district court relied upon Seth's numbers in his proposed distribution in exhibit 25 with only a couple of modifications. She asserts the district court did not include a balance of $31,264 from a premarital 401(k) in her net premarital assets. She also asserts Seth's

payments for temporary child and spousal support were erroneously included in her share of the marital increase. Seth's exhibit also reflects a liability against his value of assets in the amount of his attorney fees. The district court determined there were dissipated assets by Seth's expenditures for or on account of his new girlfriend but according to Tricia, the court included only two of many claimed transactions in the transfer for dissipated marital assets. Based upon these considerations and the fact that Seth will retain a substantial amount in net assets, Tricia contends that the equalization payment is equitable. Tricia also argues the order dividing Seth's pension plan was proper.

As provided in Tricia's brief, the district court's analysis in determining the equalization payment is as follows:

| | Tricia | Seth | Total |
|---|---|---|---|
| Net Premarital Assets | $ -- | $1,525,737 | $1,525,737 |
| Net Assets at Trial | $223,998 | $2,220,895 | $2,444,893 |
| Net Increase | $223,998 | $695,158 | $919,156 |
| Property Equalization | $235,580 | $(235,580) | $ -- |
| Share of Net Increase | $459,578 | $459,578 | $919,156 |
| Dissipation Transfer | $21,750 | $(21,750) | $ -- |
| Post-Dissolution Result | $481,328 | $1,963,565 | $2444,893 |

The determination of a proper equalization sum is complicated here by the substantial appreciation of the parties' assets during this short marriage. On appeal, Tricia does not dispute that Seth brought $1.5 million in assets into the marriage. Neither party disputes their net worth increased by $1,000,000 over the course of their marriage. There is also the equitable argument that Seth

should be given credit for paying a substantial portion of Tricia's college expenses.

Iowa Code section 598.21(5) requires the court to divide "all property, except inherited property or gifts received by one party, equitably between the parties." "This broad declaration means the property included in the divisible estate includes not only property acquired during the marriage by one or both of the parties, but property owned prior to the marriage by a party." *In re Marriage of Schriner*, 695 N.W.2d 493, 496 (Iowa 2005).

Premarital property is not set aside like gifted and inherited property. *In re Marriage of Fennelly*, 737 N.W.2d 97, 102 (Iowa 2010); *In re Marriage of Miller*, 552 N.W.2d 460, 465 (Iowa Ct. App. 1996). The district court should not separate a premarital asset from the divisible estate and automatically award it to the spouse who owned it prior to the marriage. *Fennelly*, 737 N.W.2d at 102; *Sullins*, 715 N.W.2d at 247. Rather, property brought into the marriage by a party is merely a factor among many to be considered under section 598.21(5). *McDermott*, 827 N.W.2d at 678; *Schriner*, 695 N.W.2d at 496. "[T]his factor may justify full credit, but does not require it." *Miller*, 552 N.W.2d at 465.

Here, Seth was awarded all of his premarital property and Tricia was essentially only awarded a portion of the appreciation in the value of the premarital assets and marital assets. She was also awarded a portion of Seth's pension benefit pursuant to the *Benson* formula.[9]

Appreciation in the value of assets during the marriage is a marital asset. *In re Marriage of White*, 537 N.W.2d 744, 746 (Iowa 1995). With respect to

---

[9] *See In re Marriage of Benson*, 545 N.W.2d 252, 255 (Iowa 1996).

appreciation, our supreme court has stated, "[we do not] find it appropriate when dividing property to emphasize *how* each asset appreciated—fortuitously versus laboriously—when the parties have been married for nearly fifteen years." *Fennelly*, 737 N.W.2d at 104. Here, we have a four-year marriage and the increase in value of the parties' net worth was the result of investments and the parties' wages—primarily Seth's wages and investments he began before their marriage.

We note each party has made some legitimate arguments relative to the factors to consider in determining the equalization sum. Because this marriage was brief, we find it unnecessary to perform an accounting or prepare a ledger of debits and credits. We agree Seth dissipated assets with his expenditures for or on account of his girlfriend. We need not conclude the 401(k) loan was incurred on behalf of his girlfriend to reach this conclusion. Clearly there were expenditures on behalf of the girlfriend. Seth also squandered a substantial bonus by failing to timely report his affair and supervisory conflict to his supervisors. Even if the loss of the bonus was not a dissipation of assets, "[w]e have previously determined that some conduct of a spouse which results in the loss or disposal of property otherwise subject to division at the time of divorce may be considered in making an equitable division of property." *In re Marriage of Burgess*, 568 N.W.2d 827, 828 (Iowa Ct. App. 1997).

We also note that Seth's past payments for child support and his current debt for attorney fees incurred in this action, although listed on Seth's ledger (exhibit 25), have no bearing on a proper property distribution. The evidence supports the conclusion that Tricia received more of the household belongings

than Seth. We also give consideration to the fact that Tricia leaves this marriage with a medical degree and debt free. An advanced-education degree is not a marital asset but is a factor that may be considered in determining the property division. *In re Marriage of Plasencia*, 541 N.W.2d 923, 926 (Iowa Ct. App. 1995).

Seth will leave the marriage with well over $2 million in assets. He may incur some tax consequences depending upon how he chooses to apply assets to pay the equalization sum. Seth complains that the district court failed to consider the tax consequences he will incur to pay the equalization sum. This issue was raised in Seth's posttrial motion. Seth complained that his only liquid or accessible asset was his 401(k) account, where he would incur a ten percent withdrawal penalty. The district court responded by stating, "Seth has apparently forgotten about his other investments including his two LLC's." We also note the district court did not require Seth to liquidate any particular asset to pay the equalization sum. Although the tax consequences incurred are a proper factor, we believe Seth will leave the marriage with sufficient assets and wherewithal to endure any tax penalty he may incur. If he had not squandered his bonus, he would have had sufficient funds to pay the equalization sum without incurring any tax penalty.

Seth also complains that Tricia should not have been awarded a portion of his pension because the pension's increase in value was already calculated as part of the appreciation of assets. We would agree that Seth has shown the pension account's increase in value in his ledger. In this short-term marriage, Tricia is entitled to at least a portion of the increase of appreciation in the pension, but we agree with Seth that equity does not require a division of his

pension account via a QDRO and pursuant to the *Benson* formula in light of the amount of the equalization sum awarded to Tricia. Further, by giving consideration to the increase in the pension account in fixing the equalization sum, the parties will be able to make a clean division or separation of their financial affairs. Accordingly, we modify the decree to eliminate the award to Tricia of a portion of Seth's pension account.

Upon our de novo review we conclude the district court's equalization payment in the amount of $257,330 and property distribution, as modified to eliminate the requirement that Seth's pension be divided, does equity between the parties in light of all of the factors set forth in section 598.21(5).

## VII. Attorney Fees.

Finally, Seth contends the district court's order that he pay $40,000 to Tricia for attorney fees was an abuse of discretion. Tricia maintains that the award was proper. The evidence reflects that she has incurred trial attorney fees in the sum of at least $77,900.45.

"Whether attorney fees should be awarded depends on the respective abilities of the parties to pay." *Sullins*, 715 N.W.2d at 255 (citation omitted). The district court ordered Seth to pay $40,000 in attorney fees "[b]ased on the fact he earns a substantially larger income than Tricia, the amount of property settlement to be paid to Tricia, and her earning capacity." Such a determination was not an abuse of discretion. We affirm the district court's award of trial attorney fees.

Tricia also requests appellate attorney fees. An award of appellate attorney fees is "not a matter of right, but rather rest[s] in this court's discretion. Factors to be considered in determining whether to award attorney fees include:

'the needs of the party seeking the award, the ability of the other party to pay, and the relative merits of the appeal.'" *In re Marriage of Okland*, 699 N.W.2d 260, 270 (Iowa 2005) (quoting *In re Marriage of Geil*, 509 N.W.2d 738, 743 (Iowa 1993)).

Upon consideration of Seth's ability to pay and the merits of the appeal, we conclude Tricia's request for appellate attorney fees is appropriate. Seth is ordered to pay appellate attorney fees in the amount of $5000.

**VIII. Conclusion.**

Upon our de novo review, we modify the district court's decree to the extent we eliminate the award of spousal support to Tricia and the division of Seth's pension account. On all other matters, we affirm the district court's decree.

Costs are assessed to Seth.

**AFFIRMED AS MODIFIED.**